**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

LINDSAY OLSON,

                  *Plaintiff,*

  -v-

BRAND WOODWARD LAW, L.P., *et al.*

                  *Defendants.*

Case No. 1:25-cv-03875 (BAH)

### DEFENDANTS' MOTION TO DISMISS COMPLAINT

Defendants Brand Woodward Law, L.P., and Stanley E. Woodward, Jr., (together, "Defendants" or "Brand Woodward"), through their undersigned counsel, respectfully move this Court to dismiss Plaintiff Lindsay Olson's Complaint because it is time barred under the applicable statute of limitations, barred by the doctrine of collateral estoppel, barred by the doctrine of fair use, and for failure to state a claim upon which relief can be granted. Defendants also request an award of reasonable attorney's fees, expenses, and costs incurred in defending against this lawsuit, pursuant to 17 U.S.C. § 505.

### INTRODUCTION

This case involves an overzealous plaintiff seeking to weaponize copyright law to override the due process rights of federal criminal defendants and penalize ardent advocacy by criminal defense counsel. Brand Woodward represented several individuals in criminal cases arising from the events that occurred at the United States Capitol on January 6, 2021. One of the firm's clients was Federico Guillermo Klein. Somewhat early in the representation of Mr. Klein, Brand Woodward drafted a motion to transfer Mr. Klein's case out of Washington, D.C. due to potential juror bias. While Brand Woodward was preparing the motion to transfer venue, ***but before that***

***motion was filed***, an attorney representing Mr. Klein's co-defendant filed a similar motion and included with it a report on potential juror bias in Washington, D.C. (authored by Plaintiff) as an exhibit (the "Report"). *See* Notice of Supplemental Authority in Support of Motion to Change Venue by David Lee Judd, Exhibit 1, *United States v. McCaughey, et al.*, 1:21-cr-00040-TNM (D.D.C.) (Apr. 19, 2022) (ECF No. 265).[1]  Brand Woodward reviewed this Report, and through even the most cursory of research found that it had been widely disseminated throughout the many then-ongoing January 6 criminal proceedings pending in the D.C. federal court. For ease of the Court's reference, Brand Woodward included a copy of this widely-cited Report as an exhibit to Mr. Klein's June 3, 2022, Motion to Change Venue. *See* Motion to Change Venue by Federico Guillermo Klein, *United States v. McCaughey, et al.*, 1:21-cr-00040-TNM (D.D.C.) (June 3, 2022) (ECF No. 309).

The practice of including supportive publicly-available documents in motions, particularly documents filed on the PACER system by other parties in the same case, is wholly routine and part of the competent, zealous representation expected of any criminal defense counsel.  The Motion to Change Venue was ultimately denied, and Brand Woodward continued in their representation of Mr. Klein without any issue being raised about the juror bias Report.  More than three years after Brand Woodward engaged in this routine practice of submitting what had already been a widely-disseminated and publicly-filed document, Plaintiff filed her Complaint alleging that such action amounted to copyright infringement. *See* Complaint (Nov. 6, 2025) (ECF No. 001) (hereinafter, the "Complaint").

---

[1] The Court's authority to take judicial notice of this and several related case dockets and filings necessary to accurately assess the Complaint is discussed, *infra*, at 5-6.

Plaintiff alleges that she contracted with other attorneys to prepare the Report addressing issues of potential juror bias, and that such Report could have been "licensed for use in other J6 criminal cases." Complaint, ¶¶ 16, 21. However, Plaintiff readily acknowledges that she authorized that Report to be filed publicly via PACER on two criminal dockets, and that such Report was in fact filed on those two public dockets. *Id.* at ¶ 25 ("After Plaintiff delivered a copy of the Report to the Requesting Attorneys, they uploaded the Report to the Court's public docket . . . causing a public display of the Report in support of a motion to transfer venue[.]"). Plaintiff fails to allege that she took any steps to restrict public access to her Report.  She does not allege her agreement required authorized attorneys to file the Report under seal.  Nor does she allege that she moved the presiding judge in either case to place the Report under seal.  Like all documents used in judicial proceedings, Plaintiff's Report became a public judicial record once it was filed on PACER for consideration by the Court. Despite Plaintiff's many missteps and her long period of inaction, she now demands payment from Brand Woodward (and several other law firms), mischaracterizing Brand Woodward's actions as copyright infringement.

For a myriad of reasons, Plaintiff has no cause of action against Brand Woodward, and the Complaint must be summarily dismissed with prejudice.

**_First_**, the Complaint is time barred pursuant to 17 U.S.C. § 507(b). The three-year statute of limitations began to run, at the latest, when Brand Woodward filed a copy of the Report on the criminal docket more than three years prior to the filing of this action.

**_Second_**, Plaintiff is collaterally estopped from relitigating this claim. Plaintiff brought a nearly identical claim in this Court against several defendants in *In Lux Research v. Hull McGuire, PC*, 1:23-cv-00523 (D.D.C.). In that prior case, the Court dismissed the copyright infringement

claims for alleged misuse of the same Report for nearly all the defendants, and a jury found no copyright infringement for a defendant posting onto the docket the same Report.

***Third***, the Complaint stands in opposition to case law from several other circuits broadly holding that using copyrighted material in the litigation process constitutes fair use. The few cases that Plaintiff cites in which courts have held otherwise are easily distinguishable from the allegations in the Complaint. The Complaint also contradicts a long line of cases acknowledging the constitutional rights of the public to access, review and distribute documents filed on PACER during a judicial proceeding.

***Finally***, the Complaint is generally unsupported by well-pleaded facts and clearly fails to state a claim on which relief can be granted. The Court need not take as true Plaintiff's numerous unsupported legal conclusions.

Plaintiff's legal theory would chill zealous advocacy on behalf of criminal defendants, curtail the public's right to access and review public judicial records, and undermine the congressional intent of copyright law. The Complaint must now be dismissed.

## LEGAL STANDARD

### I. Motion to Dismiss

A complaint may be dismissed for failure to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court considering 12(b)(6) motions to dismiss generally must, "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Grant v. Entertainment Cruises, Inc.*, 282 F. Supp. 3d 114, 116 (D.D.C. 2017) (quoting *Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). However, the court generally does not accept as true, "legal conclusion[s] couched as a factual allegation[.]" *Grant*, 282 F. Supp. 3d at 116 (quoting *Trudeau v. FTC*, 456 F.3d 178, 193

(D.C. Cir. 2006)). Further, a court need not accept as true "inference[s] unsupported by the facts set forth in the Complaint." *Grant*, 282 F. Supp. 3d at 116 (quoting *Trudeau*, 456 F.3d at 193).

Though generally restricted to only considering the face of a complaint and any documents attached to the complaint when deciding a 12(b)(6) motion, a court may also consider, "matters about which the Court may take judicial notice[,]" such as "public records from other proceedings." *Sibley v. Breyer*, 456 F. Supp. 2d 43, 45 (D.D.C. 2006) (quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)). *See also Amobi v. Brown*, 317 F. Supp. 3d 29, 35-36 (D.D.C. 2018) ("[C]ourts are permitted to take judicial notice of the dockets in other judicial proceedings . . .). Judicial notice is appropriate where a fact, "is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

## II.    **Judicial Notice**

As a threshold matter, Brand Woodward requests that this Court take judicial notice of several matters of public record relating to Plaintiff's allegations pursuant to Fed. R. Evid. 201. Brand Woodward specifically asks the Court to take judicial notice of the dockets and relevant filings in the following cases:

- *United States v. Timothy McCaughey, et al.*, 1:21-cr-00040 (D.D.C.)

- *United States v. Donovan Crowl, et al.,* 1:21-cr-00028 (D.D.C.)

- *United States v. Elmer Stewart Rhodes III, et al.*, 1:22-cr-00015 (D.D.C.)

- *United States v. Ethan Nordean*, *et al.*, 1:21-cr-00175 (D.D.C.)

- *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523 (D.D.C)

Each case for which Brand Woodward requests judicial notice directly relates to the allegations contained in the Complaint. *McCaughey* is the case in which Mr. Woodward

5

represented Federico Klein, meaning it is the case upon which Plaintiff bases her entire action. Plaintiff acknowledges that the Report at issue was created in connection with the *Crowl* and *Rhodes III* cases on April 15, 2022, and that such Report was filed onto those public dockets with her knowledge. Complaint, ¶ 25. The *Hull McGuire* case operates as a bar on the claim raised in the Complaint through collateral estoppel. Finally, *Nordean* demonstrates that the absolute latest that Plaintiff would have known about the existence of allegedly pirated copies of her report being filed on any criminal docket was November 9, 2022. These dockets and their contents are public records not subject to any reasonable dispute because they are maintained on PACER, a source whose accuracy cannot reasonably be questioned.

Taking judicial notice of these dockets and their contents would comport with Judge James Boasberg's prior ruling on a similar motion to dismiss a similar complaint filed by the Plaintiff. In taking judicial notice of the related criminal docket in that case, Judge Boasberg noted that he was, "declin[ing] to close [the Court's] eyes to the materials on which Plaintiffs' copyright claim relies." *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523 (D.D.C), Order, at 9 (ECF No. 061) (Sept. 19, 2023).

Given the accurate preservation of these records and their relation to Plaintiff's claims in this matter, this Court should take judicial notice of the dockets and their contents.

**ARGUMENT**

### I.     Plaintiff's Claims are Time-Barred.

Claims for copyright infringement must be, "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). As will be discussed below, the law is not entirely settled as to whether the Court must apply the "discovery rule" or the "injury rule" to calculate Plaintiff's statutory timeliness of her claims. Brand Woodward contends it is the "injury rule" that must be

6

applied.  However, under either approach, Plaintiff's claims against Brand Woodward are untimely and thus time barred.

### a.  There is No Discovery Rule for Federal Copyright Infringement Claims.

The Supreme Court has recently, "assume[d] without deciding" the applicability of the discovery rule to copyright infringement claims. *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366, 368 (2024). The majority in *Nealy* explicitly noted that it has, "never decided" the discovery rule's applicability to copyright claims, and it avoided ruling on its applicability because, "that issue is not properly presented here[.]" *Id.* at 371. However, the dissent in *Nealy* noted several of the Supreme Court's prior cases which explicitly disclaim the discovery rule's applicability to copyright infringement claims, noting that a copyright claim accrues, "when an infringing act occurs, not at some later date." *See id.* at 375-76 (Gorsuch, J., dissenting) (internal quotation marks omitted) (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014)). Accordingly, Brand Woodward urges this Court to apply the "injury rule" and dismiss the Complaint because it was filed on November 6, 2025, which is more than three years after the alleged infringing act – Brand Woodward's filing of the Report on June 3, 2022 – occurred.

At least two Circuit Courts of Appeal have acknowledged that the Supreme Court's holding in *Nealy* still leaves the issue of whether to apply the discovery rule unresolved. *See Motorola Solutions, Inc. v. Hytera Communications Corp., Ltd.*, 108 F.4th 458, 479 (7th Cir. 2024) ("*Nealy* incorporate[d] an assumption: that the discovery rule governs the timeliness of copyright claims . . . The Supreme Court has never decided whether that assumption is valid, and in *Nealy*, its review exclude[d] consideration of the discovery rule." (cleaned up) (internal citations and quotation marks omitted)). *See also Foss v. Eastern States Exposition*, 149 F.4th 102, 111 (1st Cir. 2025) ("[T]he Court repeatedly cited *Petrella's* holding that a copyright claim accrues when an infringing

7

act occurs . . . At no point did the Court . . . suggest that anything other than the infringing conduct itself, or the plaintiff's discovery of that conduct, could cause the three-year statute of limitations to begin to run." (cleaned up) (internal citations and quotation marks omitted)).

The D.C. Circuit has not itself ever ruled on whether the discovery rule applies to copyright claims, although several district courts in the District of Columbia have applied the discovery rule to copyright claims prior to *Nealy*. *See, e.g., Oppenheimer v. WL Magazine Group, LLC*, 2021 WL 6849089, at *3 (D.D.C. Mar. 4, 2021) ("While the DC Circuit has yet to address the question, the courts in this district that have applied the statute of limitations in the Copyright Act have also employed the discovery rule.").

### b.  Applying the Injury Rule, Plaintiff's Claims are Untimely.

Under the injury rule, the limitations period begins to run, "at the point when the plaintiff can file suit and obtain relief." *Nealy*, 601 U.S. at 375 (Gorsuch, J., dissenting). The "injury rule" has been referred to as the "standard rule" when two plausible constructions of a statute of limitations exist because, "Congress legislates against the standard rule that the limitations period commences when the plaintiff has a complete and present cause of action." *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019) (internal quotation marks omitted) (quoting *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 418–19 (2005)). *See also Nealy*, 601 U.S. at 375 (Gorsuch, J., dissenting) ("We call this the 'incident of injury rule' . . . [a]nd we interpret statutes with that 'standard rule' in mind." (internal citation omitted)). Brand Woodward urges the Court to apply the injury rule to the Complaint because of prior Supreme Court precedent presuming against use of the discovery rule where Congress has not provided for it in a statute, and given the lack of binding direction from either the D.C. Circuit or the Supreme Court that this Court should apply the discovery rule when considering the timeliness of a copyright claim.

Applying the injury rule, Plaintiff's claims are clearly time-barred. Plaintiff alleges that, "[i]n or about June 2022, Defendants copied Plaintiff Olson's Report and published a copy of the Report in its entirety." Complaint ¶ 32. Assuming *arguendo* that filing a publicly available document on PACER can amount to copyright infringement, Plaintiff's statutory period began to run once the Report was copied and published. Under the injury rule, Plaintiff's claims as alleged here needed to be brought in Court no later than June 3, 2025, or three years after June 3, 2022. Therefore, this case as pled is untimely and must be dismissed.

### c.  Even If the Discovery Rule Applies, Plaintiff's Claims Against These Defendants are Time-Barred.

Assuming *arguendo* that the discovery rule applies to Plaintiff's claims, Plaintiff would have three years from when Plaintiff, "knows or reasonably should know that an infringement occurs." *See Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC*, 39 F.4th 1236, 1237 (9th Cir. 2022). In most contexts, the discovery rule has been used to toll the statute of limitations for copyright infringement in instances where there was fraudulent concealment that prevented an individual from discovering the infringement. *See TRW Inc. v. Andrews*, 534 U.S. 19, 27 (2001) ("[E]quity tolls the statute of limitations in cases of fraud or concealment; it does not establish a general [discovery rule] presumption applicable across all contexts."). To allege fraudulent concealment of any kind, Plaintiff would have needed to plead, "(1) that defendants engaged in a course of conduct designed to conceal evidence of their alleged wrong-doing and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of diligence." *See e.g. Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks omitted) (quoting *Larson v. Northrop Corp.*, 21 F.3d 1164, 1172 (D.C. Cir. 1994)).  The closest Plaintiff comes to arguing any concealment is alleging that Defendants filed the Report on the publicly-accessible court docket on PACER, and referenced this public

9

document repeatedly in a publicly-accessible motion also filed on PACER. Complaint, ¶¶ 31-32, 53-55. Even applying the most generous standard, the action of filing a document publicly onto a public docket in a criminal case cannot, under any circumstances, be reasonably argued as conduct designed to conceal the action of filing said document.

Some district courts in the District of Columbia have held that the Plaintiff's statutory period could have begun to run once she knew, or, "was chargeable with such knowledge [of the infringement] on a previous date." *Oppenheimer v. WL Magazine Group, LLC*, 2021 WL 6849089, at *3 (D.D.C. Mar. 4, 2021) (internal quotation marks omitted) (*quoting Tech 7 Sys., Inc. v. Vacation Acquisition, Inc.*, 594 F. Supp. 2d 76, 83 (D.D.C. 2009)). The phrase "chargeable with such knowledge" has been held to mean if a "reasonable person could have discovered the infringement with due diligence." *Oppenheimer*, 2021 WL 6849089, at *3 (citing *Williams v. Curington*, 662 F. Supp. 2d 33, 39 (D.D.C. 2009)). Further assuming *arguendo* that this even more lenient version of the discovery rule should be applied, Plaintiff's allegations in this complaint and in the *Hull McGuire* case make clear that a diligent effort to uncover the alleged infringement would have resulted in her discovery of her claims against Defendants no later than October 10, 2022, still more than three years before the Complaint was filed.

The question of when Plaintiff can be chargeable with knowledge is easily resolved through judicial notice of the related dockets and the allegations in Plaintiff's Complaint. Plaintiff alleged in the *Hull McGuire* case that on October 10, 2022, "Hull published the October 2022 Report in the *Nordean* case without making the payment for authorization, [meaning] the Hull Defendants committed copyright infringement by copying, distributing and publicly displaying Plaintiff Olson's Report[.]" Amended Complaint, ¶ 137, *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 070-1) (Oct. 25, 2023). Considering this allegation

through judicial notice would require the Court to accept that October 10, 2022 was the absolute final moment that Plaintiff can argue she learned about the existence of so-called pirated copies of the Report. Even under this exaggeratedly generous application of the discovery rule, Plaintiff was chargeable with knowing about Plaintiff's filing no later than October 10, 2022, meaning she had until October 10, 2025 to file this complaint. Plaintiff's claim against Brand Woodward is therefore untimely and her Complaint must be dismissed.[2]

### d.   Continuing Violations Do Not Apply to Copyright Infringement Claims.

Plaintiff's complaint attempts to get around the statute of limitations issue by vaguely alleging a continuing and ongoing violation. *See e.g.* Complaint, ¶¶ 61-62, 77, 89. These are conclusory allegations that this Court can and should ignore when dismissing this Complaint.

Assuming *arguendo* that the Court would accept these insufficient claims as true, the Seventh Circuit has noted that the Supreme Court has explicitly rejected the argument that one continuing violation would toll the statute of limitations for copyright claims. *See Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 615 (7th Cir. 2014) ("Separately accruing harm should not be confused with harm from past violations that are continuing. . . We take the Court's statement to mean that the continuing-violation doctrine does not apply in this context." (internal quotation marks and citations omitted) (quoting *Petrella v. Metro-Goldwyn-Mayer, Inc.*,

---

[2] In *Hull McGuire*, Judge Boasberg expressed skepticism about Plaintiff's diligence in investigating her potential claims. Memorandum Opinion, Motion to Vacate and Amend, p. 8, *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF 076) (Nov. 27, 2023) ("Plaintiffs rejoin that they did not come across the May 2022 filing until conducting research for their Opposition to the motions to dismiss in summer 2023. [] No doubt, Plaintiffs *with some diligence could — and should — have discovered the filing on the Nordean docket earlier*." (emphasis added)). However, Judge Boasberg stated this in the context of leave to file an otherwise timely amended complaint in November 2023. Judge Boasberg's observations further support the proposition that Plaintiff's claim is time-barred in this matter, as Judge Boasberg acknowledges that Plaintiff was on notice that so-called pirated copies of her Report were in existence no later than ***May 2022***.

572 U.S. 663, 671 n.6 (2014)). *See also Petrella*, 572 U.S. at 672 ("[W]hen a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (i.e., acts within the three-year window), but untimely with respect to prior acts of the same or similar kind."). Plaintiff has alleged just one act amounting to copyright infringement that occurred in June of 2022. Complaint, ¶ 31. Plaintiff seemingly seeks to argue that this lone action combined with the Report's ongoing presence on PACER gets her around the statute of limitations. A cursory review of relevant cases shows otherwise, and this Court must dismiss the Complaint as untimely.

## II.       **Plaintiff is Collaterally Estopped from Re-Litigating This Copyright Claim.**

"Collateral estoppel bars re[-]litigation of an issue actually and necessarily litigated and determined in a prior final judgment." *Nasem v. Brown*, 595 F.2d 801, 805 (D.C. Cir. 1979). The party invoking collateral estoppel bears the burden of establishing the following:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Aenergy, S.A. v. Republic of Angola*, 123 F.4th 1351, 1356 (D.C. Cir. 2024) (quoting *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 743 (D.C. Cir. 2006)).

For the first element, Plaintiff clearly has previously litigated the issue of whether lawyers publishing her report on a public docket is a violation of her copyright. Both a judge in this district (at the motion to dismiss stage) and a jury in this district have ruled against Plaintiff on the copyright claims in that prior litigation. *See* Memorandum Opinion, Motion to Dismiss, p. 20 *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 061)

12

(Sept. 19, 2023) ("In short, the Court concludes that Plaintiffs' allegations do not state a claim for relief against Moving Defendants under the Copyright Act."). *See also* Verdict Form, ¶ 1, *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 138) (Jan. 28, 2025) ("Has Plaintiff proven by a preponderance of the evidence that Defendants infringed her copyright?" The jury foreperson checked "No."). Plaintiff may try to argue semantic differences between this claim and the *Hull McGuire* claims (*i.e.*, alleging that Brand Woodward filed the report onto a different criminal docket than *Nordean*), but courts routinely bar re-litigation for differences greater than mere semantics. *See Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254-55 (D.C. Cir. 1992) ("Preclusion cannot be avoided simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first."). The requirement for a mutuality between the parties has been abandoned, and non-mutual use of collateral estoppel is widely recognized in the D.C. Circuit. *See e.g. Crockett v. Mayor of District of Columbia*, 279 F. Supp. 3d 100, 110 (D.C. Cir. 2017) (noting that defensive collateral estoppel, "is no longer restricted to those who were parties to the first litigation or their privies, for it has come to be widely accepted that usually little good and much harm can come from allowing a determined plaintiff to retry the same issues in exhausting fashion against successive defendants." (quoting *McLaughlin v. Bradlee*, 803 F.2d 1197, 1204–05 (D.C. Cir. 1986)). *See also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979) ("Defensive use [of collateral estoppel] occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost *against another defendant*." (emphasis added)). The doctrine of nonmutual defensive collateral estoppel serves to "preclude[] a plaintiff from contesting an issue it has previously litigated and lost in another case against a different defendant." *Pharm. Care Mgmt. Ass'n v. District of Columbia*, 522 F.3d 443, 446 (D.C. Cir. 2008).

With regard to the second element, "[a] determination ranks as necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009).[3]  In the first action, the ultimate issue decided was whether "Defendants committed copyright infringement by filing the Report on the *Nordean* public docket." *See* Memorandum Opinion, Motion to Dismiss, p. 11, *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 061) (Sept. 19, 2023).  *See also* Final Jury Instructions, p. 6 *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 136) (Jan. 28, 2025) ("Plaintiffs here allege that Defendants infringed their copyright in the October 2022 Report prepared for Defendants to use in their motion to transfer venue in the trial of their client, Proud Boys member Joseph Biggs."). Given that Plaintiff raises the exact claim against Brand Woodward in relation to a filing on the *McCaughey* case, the second element is clearly met here.

The third element regarding the avoidance of basic unfairness "rarely applies when [t]he party to be bound . . . is the plaintiff[.]" *Crockett*, 179 F. Supp. 3d at 111 (cleaned up) (internal quotation marks omitted).  As Brand Woodward seeks to apply collateral estoppel defensively against a Plaintiff who had her day in Court on this exact claim, there is no risk of basic unfairness.

For these reasons, the Court should find the elements of nonmutual defensive collateral estoppel met and dismiss Plaintiff's complaint in its entirety.

---

[3] Plaintiff cannot dispute that this Court was a "court of competent jurisdiction" as required under this element. Such term has been interpreted to mean, "a court with the power to adjudicate the case before it." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 91-92 (2017) (citing Black's Law Dictionary 431 (10th ed. 2014) ("[a] court that has the power and authority to do a particular act; one recognized by law as possessing the right to adjudicate a controversy")). The Supreme Court further noted, "a court's subject-matter jurisdiction defines its power to hear cases." *Lightfoot*, 580 U.S. at 92. In the prior action, Plaintiff asserted that this Court had "exclusive jurisdiction over the subject matter of this action[.]" Second Amended Complaint, ¶ 20 *In Lux Research, et al., v. Hull McGuire PC, et al.*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 070-1) (Oct. 25, 2023).

**III.    Defendants' Filing the Report on the Docket is Both Protected by the Constitutional Right to Access and Review Judicial Records and by Fair Use.**

**a.    The Right to Access and Review Judicial Records**

The D.C Circuit and the Supreme Court both recognize a "general right to inspect and copy public records and documents, including judicial records and documents." *Metlife. Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)).

As noted above, Plaintiff's Report was made available in its entirety on PACER with her knowledge and approval on or about April 15, 2022. Complaint, ¶ 25.[4] These dockets further reflect that Plaintiff did not take any action to place these copyrighted materials under seal, either by having the authorized attorneys move to seal them or by moving to seal them herself. Once documents are posted on PACER as part of a judicial proceeding for the Court's consideration, they become judicial records. *See e.g. United States v. Munchel*, 567 F. Supp. 3d 9, 15 (D.D.C. 2021) ("Documents and other materials filed in court that are intended to influence the court are judicial records.") (cleaned up) (internal quotation marks omitted) (quoting *In re Leopold*, 964 F.3d 1121, 1128 (D.C. Cir. 2020)). The Court has gone so far as to say, "***every part of every brief*** filed to influence a judicial decision qualifies as a judicial record." *Cable News Network, Inc. v. Federal Bureau of Investigation*, 984 F.3d 114, 118 (D.C. Cir. 2021) (emphasis added) (quoting *League of Women Voters of the United States v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020)). There is a "strong presumption in favor of public access" to judicial records. *See In re Leopold*,

---

[4] Plaintiff makes a concession fatal to her claim in the Complaint by alleging that, "Defendants could have simply referenced that Plaintiff authored the Report, noticed the court that it existed and *summarized the findings*." Complaint, ¶ 68 (emphasis added). This amounts to a concession that Brand Woodward lawfully had access to the contents of the Report. Plaintiff fails to provide any meaningful distinction between her conceded lawful use and Brand Woodward's actual use.

964 F.3d at 1127. The D.C. Circuit Court of Appeals has noted that dockets themselves are judicial records subject to a right of public access. *Id.* at 1129 ("Although judges do not always rely upon dockets themselves in reaching decisions, dockets are nonetheless judicial records because they are created and kept [by courts] for the purpose of memorializing or recording ... matter[s] of legal significance. (internal quotation marks omitted) (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 905 (D.C. Cir. 1996)).

Plaintiff's own allegations show that the Report at issue is clearly and indisputably a judicial record, as Plaintiff alleges that the Report was actually used in support of a brief meant to influence a judge's decision on a pending motion prior to any action taken by Mr. Woodward. Complaint, ¶ 25 ("[Requesting Attorneys] uploaded the Report to the Court's public docket[s] . . . causing a public display of the Report *in support of a motion to transfer venue*[.]") (emphasis added).[5]

The closest a case has come to touching on this issue of whether an author can assert copyright infringement for the subsequent use of material previously prepared for litigation and filed on a docket is *Unclaimed Property Recovery Service, Inc. v. Kaplan*, 734 F.3d 142 (2d Cir. 2013). There, the Second Circuit upheld a dismissal of a complaint for failure to state a claim where an individual asserted copyright infringement over a complaint that he prepared and filed in a prior class action lawsuit; after the individual withdrew from the class action lawsuit, the individual sued his former attorney for preparing and filing an amended version of the complaint

---

[5] It must also be noted that Mr. Woodward was co-counsel with one of the Requesting Attorneys and co-counsel to the client for whom the Report was authorized, prepared, and filed with Plaintiff's approval in the prior Oath Keepers case. *See* Minute Order, *United States v. Dominic Crowl et al*, 1:21-cr-00028-APM (D.D.C.) (Aug. 10, 2021) ("MINUTE ORDER as to CONNIE MEGGS (9) granting Defendant's 326 Motion for Substitution of Counsel. Stanley Woodward's appearance as counsel for CONNIE MEGGS (9) shall be entered on the docket[.]").

16

on behalf of the remaining class plaintiffs. *Id.*, at 143-44.  The Second Circuit held that "the holder of a copyright in a litigation who has authorized a party to a litigation to use the document in the litigation . . . necessarily conveys, ***not only to the authorized party but to all present and future attorneys and to the court***, an irrevocable authorization to use the document in the litigation thereafter." *Id.* at 144 (emphasis added). The Second Circuit acknowledged the concerns that underlie Plaintiff's claims and about which Brand Woodward now warns, stating, "[w]e do not mean to suggest that permission of the copyright holder is inevitably needed for use of a copyrighted document in litigation. Our ruling concerns only the consequence of a grant of authorization for use in litigation which the holder then purports to withdraw." *Id.* at 144 n.1. The Second Circuit also noted that to rule otherwise would "unduly interfere with the litigation process, [and would] limit the district court's ability to manage its cases." *Id.* at 146.

It is abundantly clear that whatever copyright Plaintiff may have in the Report does not supersede the public's right to access judicial records and use them in the same or similar judicial proceedings. Plaintiff authorized her Report to be filed in full on at least two dockets in this Court to support a change-of-venue motion. Plaintiff seemingly realizes her inability to actually assert copyright over judicial records, conceding, "Defendants could have simply referenced that Plaintiff authored the Report, noticed the court that it existed and summarized the findings." Complaint, ¶ 68. This Court must dismiss Plaintiff's complaint for failure to state a claim.

### b.  Brand Woodward's Actions Constitute Fair Use.

While acknowledging that the issue of fair use is an affirmative defense that is, "not traditionally decided on a motion to dismiss[,]" *Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289, 295 (D.D.C. 2017), Brand Woodward contends that this case is one of the rare instances in which fair use analysis is appropriate prior to discovery and warrants dismissal. Courts in other

circuits have affirmed dismissals of actions based on fair use where the nature of the allegedly infringing work can be determined without discovery, primarily due to the complaint's reference to the work and alleged infringements contained in the complaint. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("Because the claim was limited to the production and distribution of a single episode, the district court was correct to rely solely on the two expressive works referenced in Brownmark's amended complaint and attached to SPDS's motion, as well as the allegations in the complaint, to decide on the fair use defense."). *See also Roe v. Bernabei & Wachtel PLLC*, 85 F. Supp. 3d 89, 99 n.8 (D.D.C. 2015) (noting, "instances where Courts have granted a Rule 12(b)(6) motion on the basis of a fair use defense . . . in those cases [where] the pleadings included sufficient facts."). Here, Plaintiff has attached the allegedly infringing Report to the Complaint. *See* Complaint, Exhibit A. For these reasons, the Court can decide that Brand Woodward's alleged use of the Report was fair use based on the allegations contained in the Complaint.

In determining whether use of copyrighted material is protected as fair use, the Court must consider: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *See e.g. In Lux Research v. Hull McGuire PC*, 1:23-cv-00523-JEB (D.D.C.) (ECF No. 083) (Feb. 26, 2024) (citing 17 U.S.C. § 107).

At the outset, many other circuits have recognized a general rule that copyrighted material can be included on a judicial docket without copyright infringement through the doctrine of fair use. *See Devil's Advocate, LLC v. Zurich American Insurance Company*, 666 Fed. App'x 256, 266

18

n.12 (4th Cir. 2016) ("Several of our sister circuits have concluded that use of copyrighted material in court proceedings is fair use.").[6]  One court has gone as far as to state, "[r]eproduction of copyrighted material for use in litigation or potential litigation is generally fair use, *even if the material is copied in whole.*" *Stern v. Does*, 978 F. Supp. 2d 1031, 1047 (C.D. Cal. 2011), *aff'd*, 512 Fed. App'x. 701 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 423, 187 L. Ed. 2d 281 (2013) (emphasis added). *See also Denison v. Larkin*, 64 F. Supp. 3d 1127, 1133 (N.D. Ill. 2014) ("The House Committee on the Judiciary explicitly listed '*reproduction of a work in* legislative or *judicial proceedings or reports' as an example of a fair use*") (emphasis added) (quoting H.R. Rep. No. 94–1476, 65 (1976)). Further, at least one district court in another jurisdiction has specifically observed that copyrighted material previously accepted into evidence can be used during the legal representation of a criminal defendant, and that to hold otherwise would allow copyright law to usurp the rights of criminal defendants. *See Kulik Photography v. Cochran*, 975 F. Supp. 812, 814 (E.D. Va. 1997) ("This Court cannot agree that the Defendants did anything wrong in using an item of evidence already accepted into the case during their closing argument. To permit otherwise would permit the copyright laws to trump the constitutional rights of a criminal defendant.").[7] Although the Court's analysis can begin and end with this line of cases, Defendants will briefly summarize each fair use factor as they apply in this case.

---

[6] The cases compiled in this opinion and their included parentheticals are as follows: "*Hollander v. Steinberg*, 419 Fed. App'x 44, 47-48 (2d Cir. 2011) (affirming summary judgment on fair use where attorney sued opposing counsel for filing his essays in a judicial proceeding); *Jartech, Inc. v. Clancy*, 666 F.2d 403, 407 (9th Cir. 1982) (affirming fair use where adult films were copied for use in judicial proceedings, were not made for subsequent use or enjoyment, and were not for commercial use); *Shell v. Devries*, WL 324592 (D. Colo. Jan. 31, 2007) (finding fair use where a portion of a copyrighted website was used as an exhibit to a motion for attorney's fees), *aff'd* 2007 WL 4269047 (10th Cir. 2007)."

[7] Related to this principle is the common law "litigation privilege" or "judicial proceedings privilege" that normally attaches to the actions of attorneys performed, and the contents of legal

The first fair use factor considers the purpose and character of use, primarily focusing on whether the use is commercial in nature.  To find commercial use, the Court must determine that Brand Woodward, "exploit[ed] the copyright for commercial gain – as opposed to incidental use as part of a commercial enterprise. *See Stern*, 978 F. Supp. 2d at 1045-46 (quoting *Elvis Presley Enterprises, Inc. v. Passport Video*, 349 F.3d 622, 627-28 (9th Cir. 2003), *overruled on other grounds*, *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989 (9th Cir. 2011)). It has also been observed that, "a judicial or arbitration proceeding serves a salutary truth-seeking function, and cannot be character as a purely 'commercial' endeavor, even though money damages might well be at stake." *Images Audio Visual Prods., Inc. v. Perini Bldg. Co.*, 91 F.Supp.2d 1075, 1083 (E.D. Mich. 2000). *See also Shell v. Devries*, 2007 WL 324592, at *4 (D. Colo. Jan 31, 2007) ("Nor are there any allegations to support a reasonable inference that the defendants' use of the material was commercial in nature. To the contrary, the Complaint alleges that the defendants used the copyrighted portion of the plaintiff's website as an exhibit to a motion for attorneys' fees."), *aff'd* 2007 WL 4269047 (10th Cir. Dec. 6, 2007).

Under the first fair use factor, courts also consider whether the subsequent use was transformative. 17 U.S.C. § 107(1). The Supreme Court has noted that, while important, "transformative use is not absolutely necessary for a finding of fair use[.]" *Campbell v. Acuff-Rose*

---

filings made, during litigation.  *See e.g. Messina v. Krakower*, 439 F.3d 755, 760 (D.C. Cir. 2006) ("The judicial proceedings privilege … is well-settled in District of Columbia law."); Fed. R. Evid. 501 ("the privilege of a ... person ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."). The objectives served by the common law litigation privilege are salient here. A criminal defense attorney merely filing zealous pleadings on behalf of his client in court should not face the risk of becoming a defendant himself in a future lawsuit. *See 3H Enterprises, Inc. v. Dwyre,* 182 F. Supp. 2d 249, 260 (N.D.N.Y. 2001) ("Our system requires attorneys to zealously represent their clients, and, in many cases, the public as well. Suits against attorneys for their actions taken in zealously representing their clients must be held to the highest standard.").

*Music, Inc.*, 510 U.S. 569, 579 (1994). Here, Plaintiff admits that her work was published and publicly available at the time Brand Woodward filed the document in their case, meaning the work was previously published and available. Complaint, ¶ 25. Further, copying of material in its entirety can be transformative, "[i]n the context of news reporting and analogous activities[.]" *American Society for Testing and Materials, et al. v. Public.Resource.Org, Inc.*, 896 F.3d 437, 450 (D.C. Cir. 2018). Considering this analysis and the line of cases identified which note that the use of material in judicial proceedings broadly constitutes fair use, the Court should find the first factor weighs in favor of fair use.

The second fair use factor considers "the nature of the copyrighted work." 17 U.S.C. § 107(2). The Supreme Court has noted that this factor mainly comes down to whether a work is factual or fictional, noting "[t]he law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 563 (1985). *See also American Society for Testing and Materials*, 869 F.3d at 451 ("Courts often reduce this inquiry [into the second fair use factor] to the question of whether the work is factual or fictional . . . All of the works at issue here fall at the factual end of the fact-fiction spectrum, which counsels in favor of finding fair use."). Though Plaintiff claims a level of creativity in how factual data was arranged, that does not change the fact that Plaintiff's work was entirely factual in nature. Also under this factor is the question of whether a work is published or unpublished. *See e.g. Harper & Row Publishers, Inc.*, 471 U.S. at 564 ("[T]he scope of fair use is narrower with respect to unpublished works [because] .... the author's right to control the first public appearance of his expression weighs against use of the work before its release."). However, at least one court has found that previously filing material that is otherwise unpublished on a court docket goes against finding that a work is otherwise unavailable or unpublished. *See White v. West*

*Pub. Corp.*, 2014 WL 3385480, at *3 (S.D.N.Y. July 11, 2014) ("[W]hile White's briefs were in some sense unpublished, this factor is made less significant by the fact that White intentionally made the briefs publicly available by filing them with the court; thus the circumstances of this case do not implicate the rationales for protecting unpublished works."). This factor therefore further weighs in favor of a finding of fair use.

The third fair use factor considers, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole[.]" 17 U.S.C. § 107(3). As stated herein, this factor generally does not apply to use in the litigation process. At least one other circuit has recognized based on Supreme Court precedent that "there is no per se rule against copying in the name of fair use an entire copyrighted work if necessary." *Chicago Bd. Of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003) (citing *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 449-50 (1984)). Brand Woodward's alleged use of the Report was during the litigation process to advocate zealously on behalf of their client, and they could only adequately do so through use of the entire Report. The Court therefore should find this factor weighs in favor of a finding of fair use.

The fourth fair use factor examines "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). "It requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *American Society for Testing and Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1271 (D.C. Cir. 2023) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994)). It has been observed that this analysis requires the balancing of "monetary losses to the copyright holder against any public

benefit of the copying." *American Society for Testing and Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1271 (D.C. Cir. 2023) (internal quotation marks omitted) (quoting *Google LLC v. Oracle America, Inc.*, 593 U.S. 1, 35 (2021). As there is a "strong assumption" in favor of access to judicial records, any market effect asserted by the Plaintiff must be balanced against such public rights. For these reasons, this factor is either neutral or in favor of a finding of fair use.

Plaintiff proffers a district court opinion and a state court opinion in her Complaint to preemptively argue against any possible fair use, but even a cursory review of both cases and their subsequent application reveals that they are wholly distinguishable from Brand Woodward. First, Plaintiff cites *Images Audio Visual Prods., Inc. v. Perini Bldg. Co.*, 91 F. Supp. 2d 1075, 1082-83, 1086 (E.D. Mich. 2000), to assert that attorneys engage in copyright infringement if they hire a photographer and then use those photos in arbitration proceedings without paying. However, *Perini* does not stand for the proposition that copyrighted work can only be used in litigation with the express permission of the creator, with the Court noting, "[c]ertainly, under appropriate circumstances, the Court would not hesitate to conclude that copyright protection must yield to the need to present a complete evidentiary record." *Images Audio Visual Prods., Inc. v. Perini Bldg. Co.*, 91 F. Supp. 2d 1075, 1086 (E.D. Mich. 2000). Further still, Plaintiff's own analogizing of the *Perini* case shows its inapplicability here: Brand Woodward did ***not*** hire Plaintiff to create the Report, only to then use the Report without paying her for what they had fraudulently induced her to make; Plaintiff made this report for other attorneys and allowed that document to be published in its entirety on PACER. At least one district court has distinguished the *Perini* case on this basis. *Guetzloe Group, Inc. v. Mask*, 2007 WL 9719332, at *5 (M.D. Florida Apr. 9, 2007) ("In the instant case, there was no contract between [Plaintiff] and the Defendants, and the original January 10th program (as distinguished from the copies the Defendants made) was not created for any

23

litigation purpose. These differences render [*Perini*] inapposite."). *See also Images Audio Visual Prods., Inc. v. Perini Bldg. Co.*, 91 F. Supp. 2d 1075, 1084 (E.D. Mich. 2000) ("[T]wo facts take on great significance in the Court's first-factor inquiry: (1) that Plaintiff was *retained* in part to create a photographic record of Defendant's construction efforts in the event that a dispute arose; and (2) that *the agreement between Plaintiff and Defendant* specifically established the price for additional copies of Plaintiff's works.") (emphasis added). Given the lack of any contract between Plaintiff and Brand Woodward, *Perini* is wholly distinguishable.

Plaintiff also offers *Ross v. Miller's Rexal Drugs, Inc.*, 1990 WL 314290 (Ga. Super. Oct. 10, 1990), a state court decision readily distinguishable based on Plaintiff's own allegations. In *Ross*, defendants tried to use the subpoena power to compel a photographer to provide photographs prepared for the plaintiff in that proceeding without paying the customary fee. *Ross v. Miller's Rexal Drugs, Inc.*, 1990 WL 314290, at *1 (Ga. Super. Oct. 10, 1990). Once again, the Court noted the importance of a relationship between the parties in *Ross* that does not apply to this case, given the Plaintiff does not allege any contact with Brand Woodward leading to her preparing the Report. Further, the Court's analysis in *Ross* essentially came down to a concern with the negative market affects that could happen if vendors could be, "*compelled* through the discovery process to turn over [their] work at no cost to the opposing side[.]" *Ross v. Miller's Rexal Drugs, Inc.*, 1990 WL 314290, at *2 (Ga. Super. Oct. 10, 1990) (emphasis added). Plaintiff was not compelled to make her Report broadly publicly available in its entirety: Plaintiff readily admits this was the exact design of her business model. Complaint, ¶ 25. Plaintiff's case is therefore wholly distinguishable from *Ross*.

## IV.    The Complaint is Otherwise Insufficiently Pled.

Plaintiff's Complaint is replete with unsupported conclusory statements which this Court must not consider.  This is most evident in Plaintiff's attempt to allege "secondary liability." *See* Complaint, ¶ 86 ("Defendants are each secondarily liable for their respective employees, contractors, associates, and agents' infringement when they publicly displayed Olson's Report in Court for their client without paying to secure a license to use Olson's Report for J6 [*sic*] Federico Klein."). Secondary liability must be established through either contributory infringement or vicarious infringement.

Contributory infringement requires: "(1) direct infringement by a third party; (2) knowledge by the defendant that third parties were directly infringing; and (3) substantial participation by the defendant in the infringing activities." *Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 126 (D.D.C. 2011) (internal citation omitted). Plaintiff fails to even allege the existence of infringing third parties, meaning Plaintiff has not adequately pled contributory infringement.

As to vicarious infringement, Plaintiff must allege that Brand Woodward had: "(1) the 'right and ability' to supervise the infringing activity and (2) a 'direct financial interest' in such activities." *Id.* (quoting *MOB Music Pub. v. Zanzibar on the Waterfront, LLC*, 698 F. Supp. 2d 197, 206 (D.D.C. 2010)). Plaintiff has not alleged any direct financial interest that Brand Woodward would have had in any infringing activity, instead making unsupported conclusory allegations of financial benefit. *See e.g.* Complaint ¶ 85 ("Defendants directly benefitted financial from copyright infringement of the Report."). Regardless, Plaintiff has not alleged any relevant supervisory relationship Brand Woodward had with anyone who engaged in any infringing activity.

25

Plaintiff has failed to plead the required elements of secondary liability. Moreover, for all of the same reasons asserted above that Brand Woodward has no direct liability, it would be impossible for Plaintiff to properly plead a claim of secondary liability. As such, any claims based on secondary liability must be dismissed for failure to state a claim upon which relief can be granted, without leave to amend.

**V.       Brand Woodward is Entitled to Recover Attorney's Fees, Expenses, and Costs Incurred in Defending This Case**

Brand Woodward is entitled to recover reasonable attorney's fees, expenses, and costs incurred in defending this action. *See* 17 U.S.C. § 505 (in copyright infringement cases, the court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs."). A district court has the discretion to award attorney's fees to the prevailing party, and "[p]revailing plaintiffs and prevailing defendants are to be treated alike[.]" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994). Courts are instructed to consider, "several nonexclusive factors" which include, "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Spanski Enterprises, Inc. v. Telewizja Poska, S.A.*, 2018 WL 11413156, at *1 (D.C. Cir. Nov. 27, 2018) (quoting *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016)). "Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals." *Kirtsaeng*, 136 S. Ct. at 1979.

In considering Brand Woodward's request for attorney's fees, expenses, and costs, the Court should place particular emphasis on Plaintiff's objective unreasonableness and the need for deterring further litigation.  As stated herein, Plaintiff essentially conceded the unreasonableness of her claim by alleging that Brand Woodward and other similarly-situated attorneys could have sought to reference her Report through judicial notice, a distinction without a difference to

26

downloading a copy from PACER and filing it again on the docket. This concession demonstrates the unreasonableness of her lawsuit. Further and as stated herein, Plaintiff has litigated (and lost) a prior copyright claim on almost identical facts in this district. Further still, Plaintiff has filed at least three other identical lawsuits in this Court, the Federal Circuit, and the Second Circuit. Plaintiff should be deterred from continuing to assert these frivolous claims.

## **CONCLUSION**

For the reasons contained herein, Brand Woodward respectfully requests that this Court dismiss the Complaint with prejudice and without leave to amend. Defendants also request an award of reasonable attorney's fees, expenses, and costs incurred in defending against this lawsuit, pursuant to 17 U.S.C. § 505.

Dated: December 8, 2025                    Respectfully submitted,

**SCHULMAN BHATTACHARYA, LLC**

By:    /s/ Jeremy Schulman
Jeremy W. Schulman (D.C. Bar No. 481755)
Jeffrey S. Gavenman (D.C. Bar No. 1004429)
Koushik Bhattacharya (D.C. Bar No. 1006901)
Mark P. Nobile (D.C. Bar No. 1780761)
6116 Executive Boulevard, Suite 425
North Bethesda, Maryland 20852
Tel.: (240) 356-8550
Facsimile: (240) 356-8558
jschulman@schulmanbh.com
jgavenman@schulmanbh.com
kbhattacharya@schulmanbh.com
mnobile@schulmanbh.com

*Counsel for Defendants Brand Woodward Law, L.P., and Stanley E. Woodward, Jr.*

27

**CERTIFICATE OF SERVICE**

The undersigned herby certifies that on December 8, 2025, a true and correct copy of the

foregoing complaint was served upon all counsel of record via the Court's CM/ECF system.

/s/ Jeremy Schulman
Jeremy W. Schulman